

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

RICKIE SIMMONS
818 N. Quincy St.
No. 1603
Arlington, VA 22203

       Plaintiff,

       v.

SOLERA NETWORKS, INC.
SERVE: Steve Shillingford, Registered Agent
1288 E. Fawn Pointe Ct.
Draper, UT 84020

       Defendant.

Case No. _1 : 13CV1280_
            _TSE/TCB_

## COMPLAINT

    **COMES NOW** Plaintiff Rickie Simmons by and through its undersigned counsel, and for and as his Complaint against Defendant Solera Networks, Inc. ("Solera") alleges as follows:

### Parties

    1.  Richard Simmons is a resident of Arlington, Virginia who was formerly employed by the Defendant as its Vice President of Global Sales. At the time that the events that gave rise to his claims Mr. Simmons was a resident of Arlington County and the City of Alexandria, Virginia.

    2.  Upon information and belief Solera is a Delaware corporation, which maintains its principal place of business at 10713 S. Jordan Gateway, South Jordan, UT 84095. Solera does substantial business with federal and private entities located in this District. Also the Defendant

approached Mr. Simmons, then a resident of the City of Alexandria, with an offer of employment the terms of which offer were negotiated with Mr. Simmons while he resided in this District. While Mr. Simmons was employed by the Defendant, he lived and worked in this District. The damages Mr. Simmons suffered were realized while he was a resident of Arlington County.

## Jurisdiction and Venue

3. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the Plaintiff and Defendant are citizens and residents of different states and the amount in dispute exceeds $75,000.

4. This Court has jurisdiction over this action pursuant to, among other things, Va. Code Ann. § 8.01-328.1(A) because the Defendant is transacting business in the Commonwealth of Virginia, the acts and omissions leading to the Plaintiff's injuries were committed by the Defendant in the Commonwealth of Virginia, among other places.

5. This Court has venue over this action under 28 U.S.C. § 1391 because the Defendant regularly conducts business in this District, and the acts and omissions leading to the Plaintiff's injuries were suffered by the Plaintiff when he resided in this District.

## Factual Allegations

6. Mr. Simmons has worked in marketing and sales for Government contractors for over twenty years. Though out that time, Mr. Simmons has built a reputation as an ethical, effective sales manager in the information technology and security sectors.

7. Mr. Simmons was hired by Solera in 2011 as Vice President of North American Sales. The terms of Mr. Simmons employment were that he was to be paid a base salary plus additional compensation based on sales commissions and stock options in Solera. Under the terms of Mr.

2

Simmons's employment agreement, the parties anticipated that he would continue to be employed by Solera as long as he continued to meet or exceed his sales goals established at the beginning of each fiscal year and that he would only be terminated for cause.

8. Additionally, under the terms of Solera's stock option plan which was incorporated into Mr. Simmons's employment agreement with Solera, Mr. Simmons was entitled to receive certain options to purchase shares of Solera stock, which shares would vest after a certain period of time defined in the stock option plan.

9. At the time of Mr. Simmons's hiring Solera was performing poorly and was unable to effectively market its products. Through Mr. Simmons' efforts Solera's sales increased dramatically from $3 million to $8 million for FY 2011. Mr. Simmons's efforts in FY 2012 showed even further dramatic growth increasing Solera's sales to $18 million.

10. For over six months Mr. Simmons was located by Solera in its Northern Virginia office directing sales to Solera's Government customers in Northern Virginia, Maryland, and the District of Columbia.

11. Mr. Simmons was being considered for a promotion of Vice President of World Wide Sales. In January 2013 at the company's Customer Advisory Board meeting in Deer Valley, Utah Mr. Shillingford gave his endorsement to Mr. Simmons for the promotion.

12. Despite Mr. Simmons' outstanding efforts he was improperly and without warning terminated in February 2013.

13. At that time Solera's President and Chief Executive Officer, Steve Shillingford, misrepresented issues of material fact to Mr. Simmons concerning the termination of his employment. Specifically, Mr. Shillingford misrepresented to Mr. Simmons that the genesis for his firing was a decision of the company's Board of Directors (the "Board"). At that time Mr.

Shillingford made the following positive statements of fact, to wit, "I did everything I could to prevent the Board's decision." "I could not convince them that you should not be fired."

14. Mr. Shillingford's statements were reiterated the same day by a text message from Mr. Shillingford's wife to Mr. Simmons's wife that stated that Mr. Shillingford was surprised by the Board's action and that he had done everything he could to prevent the Board from firing Mr. Simmons.

15. Following these statements, that same day, Mr. Simmons was presented with a document requiring him to release any claims against Solera for his firing. Mr. Simmons was told that if he failed to execute the release he would receive no termination pay or severance of any sort.

16. It was on the basis of this statement and the threats made against Mr. Simmons that Mr. Simmons entered into a specious and one-sided Separation Agreement and Release (the "Separation Agreement").

17. In reality Mr. Simmons has subsequently learned from a member of the Board that Mr. Shillingford had initiated the termination process that the Board had not wanted to terminate Mr. Simmons, but that the Board was convinced to fire Mr. Simmons on the basis of Mr. Shilingford's presentation and insistence. Had Mr. Simmons known the true facts of his termination he would not have executed the Separation Agreement. Since the Separation Agreement was procured by Mr. Shillingford's lies, improper actions, and duress, that document is void and cannot bind Mr. Simmons. In these actions Mr. Shillingford was acting as the agent and on behalf of Solera.

18. At the time of his improper termination Mr. Simmons owned certain shares of Solera stock which had not yet vested under the terms of his employment agreement. Mr. Simmons'

4

unvested shares in Solera, would have vested and become transferable in April 2013. Prior to the vesting of stock options the value of Solera stock held by Solera's President Steve Shillingford were increased.

19.  Subsequent to Mr. Simmons's termination, in May 2013 Solera was purchased by a company named Blue Coat Systems, Inc. increasing the value of vested shares in Solera held by others like Mr. Shillingford.

## Count I
## (Breach of Contract)

20.  Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 19 above.

21.  Mr. Simmons was hired by Solera in 2011 as Vice President of North American Sales.  The terms of Mr. Simmons employment were that he was to be paid a base salary plus additional compensation based on sales commissions and stock options in Solera.  Under the terms of Mr. Simmons's employment agreement, the parties anticipated that he would continue to be employed by Solera as long as he continued to meet or exceed his sales goals established at the beginning of each fiscal year and that he would only be terminated for cause.

22.  Additionally, under the terms of Solera's stock option plan which was incorporated into Mr. Simmons's employment agreement with Solera, Mr. Simmons was entitled to receive certain options to purchase shares of Solera stock, which shares would vest after a certain period of time defined in the stock option plan.

23.  At the time of his improper termination Mr. Simmons owned certain shares of Solera stock which had not yet vested under the terms of his employment agreement.  Mr. Simmons' unvested shares in Solera, would have vested and become transferable in April 2013.  Prior to the

5

vesting of stock options the value of Solera stock held by Solera's President Steve Shillingford were increased.

24. Subsequent to Mr. Simmons's termination, in May 2013 Solera was purchased by a company named Blue Coat Systems, Inc. increasing the value of vested shares in Solera held by others like Mr. Shillingford.

25. Mr. Simmons fulfilled all of his obligations to Solera under his employment agreement. Conversely, Solera failed to comply with its obligations to Mr. Simmons under the agreement and Mr. Simmons's improper termination on the basis of Mr. Shillingford's false presentation to the Board was improper and a breach of Mr. Simmons's contract with Solera.

26. On the basis of Solera's breach of its obligations to Mr. Simmons under the employment agreement between the parties, Mr. Simmons has suffered damages.

27. The Plaintiff respectfully requests that the Court render judgment in its favor in the amount of $1,730,359.60 which are the damages Mr. Simmons's suffered due to Solera's breach of its employment agreement with Mr. Simmons, the Plaintiff's costs to bring this suit, Plaintiff's attorney fees to be proven at trial, and such other relief as the Court deems appropriate.

## Count II
## (Fraud in the Inducement)

28. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 27 above.

29. The Defendant through its president Steve Shillingford made positive statements of fact, for the purpose of inducing Mr. Simmons to enter into the Separation Agreement.

30. Specifically, Mr. Shillingford misrepresented to Mr. Simmons that the genesis for his firing was a decision of the company's Board. At that time Mr. Shillingford made the following

positive statements of fact, to wit, "I did everything I could to prevent the Board's decision." "I could not convince them that you should not be fired."

31. Mr. Shillingford's statements were reiterated the same day by a text message from Mr. Shillingford's wife to Mr. Simmons's wife that stated that Mr. Shillingford was surprised by the Board's action and that he had done everything he could to prevent the Board from firing Mr. Simmons.

32. Following these statements, that same day, Mr. Simmons was presented with a document requiring him to release any claims against Solera for his firing. Mr. Simmons was told that if he failed to execute the release he would receive no termination pay or severance of any sort.

33. It was on the basis of these statements and the threats made against Mr. Simmons that Mr. Simmons entered into a specious and one-sided Separation Agreement and Release (the "Separation Agreement").

34. In reality Mr. Simmons has subsequently learned from a member of the Board that Mr. Shillingford had initiated the termination process that the Board had not wanted to terminate Mr. Simmons, but that the Board was convinced to fire Mr. Simmons on the basis of Mr. Shilingford's presentation and insistence. Had Mr. Simmons known the true facts of his termination he would not have executed the Separation Agreement. Since the Separation Agreement was procured by Mr. Shillingford's lies, improper actions, and duress, that document is void and cannot bind Mr. Simmons. In these actions Mr. Shillingford was acting as the agent and on behalf of Solera.

35.  These representations were untrue when they were made, and the Defendant's agents made these statements with the intent of inducing Mr. Simmons into entering into the Separation Agreement.

36.  The Plaintiff relied on the Defendant's representations and was induced by these misrepresentations that they are material into executing the Separation Agremeent.

37.  Mr. Simmons was damaged by the Defendant's actions because at the time of his improper termination Mr. Simmons owned certain shares of Solera stock which had not yet vested under the terms of his employment agreement.  Mr. Simmons' unvested shares in Solera, would have vested and become transferable in April 2013.  Prior to the vesting of stock options the value of Solera stock held by Solera's President Steve Shillingford were increased.

38.  Subsequent to Mr. Simmons's termination, in May 2013 Solera was purchased by a company named Blue Coat Systems, Inc. increasing the value of vested shares in Solera held by others like Mr. Shillingford.

39.  The Plaintiff respectfully requests that the Court render judgment in its favor in the amount of $1,630,359.60 which are the damages Mr. Simmons suffered on the basis of the Defendant's fraudulent statements, the Plaintiff's costs to bring this suit, Plaintiff's attorney fees to be proven at trial, and such other relief as the Court deems appropriate.

**WHEREFORE** the Plaintiff respectfully requests that the Court enter judgment in the amounts requested.

Respectfully submitted,

Date: 10/10/13

By: _____

James S. DelSordo, Esq.
VSB No. 33940
9255 Center St.
Suite 307
Manassas, VA 20110
(703) 368-8770

Counsel for Plaintiff Rickie Simmons